(80 South. 243)

No. 22761.

WILEY v. BOWMAN.

(June 29, 1918. Rehearing Denied Dec. 2, 1918.)

*(Syllabus by the Court.)*

SLAVES ⊜⇒14—CHILDREN—HEIRSHIP.

A child born of a slave marriage, which marriage was followed by cohabitation and the living together as husband and wife, after the emancipation of the parties is the heir of those persons.

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; S. Allen Bordelon, Judge.

Suit by George Wiley against Eliza Bowman, widow of Edmund Wiley, deceased, to annul a nuncupative will of deceased, giving the usufruct of his property to her, and for recognition as the sole heir of the deceased. Judgment recognizing plaintiff as sole heir of the deceased and annulling the will, but holding widow entitled to the usufruct of the property, and from the judgment recognizing plaintiff as heir and annulling the will, she appeals, and plaintiff, answering the appeal, asked a reversal of the judgment as to the usufruct, in which, after defendant's death pending the appeal, George Stewart, her sole heir at law and universal legatee, became a party defendant in prosecuting the appeal. Judgment affirmed against George Stewart as heir at law and universal legatee.

G. H. Couvillon and Jas. H. Ducote, both of Marksville, for appellant.

Cappel & Cappel, of Marksville, for appellee.

SOMMERVILLE, J. Defendant appealed from a judgment recognizing plaintiff to be the sole and only legitimate heir of Edmund Wiley, his father, and conferring upon him all the rights and privileges of a legitimate child; declaring the will of the deceased Edmund Wiley to be null and void; and decreeing to defendant the usufruct of the property of Edmund Wiley during her natural life, or until she married again.

Plaintiff answered the appeal, and asked that that portion of the judgment which gave the usufruct of the property to the defendant be reversed; but, as Eliza Bowman died after the appeal was taken, it becomes unnecessary to review that portion of the judgment.

On motion of counsel, George Stewart has been made party to the proceedings, and he has been authorized to prosecute the suit in

place of defendant, as her sole heir at law and universal legatee.

Defendant denied that George Wiley was the legitimate son of Edmund and Rose Wiley. She alleged that Edmund and Rose were slaves at the time of their marriage in the year 1862; that the law considers marriage in no other view than as a civil contract; that slaves were unable to contract; and that Rose and Edmund's marriage was not contracted and solemnized according to the rules which the law prescribes.

The evidence shows that William Frith was the owner of Edmund Wiley, and that Daniel McMallen was the owner of the slave Rose, in the year 1862, and that they continued to be the owners of those slaves until the latter were emancipated. It further shows that Frith and McMallen lived together, as members of the same family, on a plantation on Bayou Jacques, in St. Landry parish, and that Edmund and Rose lived in the quarters on said plantation. Further, that Edmund and Rose appeared before their masters in the year 1862 and asked permission to marry; that Frith and McMallen were together at the time, with the members of their families, and that they both consented to the request of the parties. Eumund and Rose were told to join hands, and that they were husband and wife. The marriage was celebrated by a ball in the quarters that night, where cake and wine were served. From that day until some time in 1866 Edmund and Rose continued to cohabit and to live together as husband and wife. They were taken to Nacadoches, Tex., by their masters, in the latter part of 1862, and returned with them to the state of Louisiana in the latter part of 1865. While in Texas, George, the plaintiff, was born to the married couple. After their return to Louisiana, Edmund and Rose continued to live together on the plantation of their masters until they left together for Bayou Rouge Prairie about December 1, 1865. After living some four or five months in the latter place, Edmund left Rose, and, at a subsequent time, married the defendant in this suit.

Defendant argues that because there was no further marriage ceremony than the joining of hands and the owners' consent to the marriage, that it was not solemnized according to the rules prescribed in the Code, and consequently that there was no marriage which can be recognized by the courts. She relies upon an expression of opinion in the case of Johnson's Heirs v. Raphael, In re Raphael, 117 La. 967, 42 South. 470, which says that the Code—

"surely contemplated some kind of a public celebration of the contract of marriage."

In that case, as found by the court:

"The evidence of the subsequent conduct of the parties shows that no marriage, formal or informal, was ever celebrated between them, and it is further shown that they were separated while held in bondage and never cohabited as man and wife after they were emancipated. Each of them repudiated their former irregular relations by subsequent lawful marriage with other persons."

The legal issue presented is, whether a marriage of slaves contracted with the consent of their owners, and ratified by continuous cohabitation before and after their emancipation, produces the ordinary civil effects of marriage, and whether its civil effects retroact to the date of the marriage. Correct principles and the jurisprudence of the state leave no doubt on the question.

Article 182 of the Civil Code of 1825, in force before the war, provided:

"Slaves cannot marry without the consent of their masters, and their marriages do not produce any of the civil effects which result from such a contract."

And it was long since held by this court that, after the emancipation of the parties, such a contract of marriage—

"legal and valid by the consent of the master and moral assent of the slave, from the moment of freedom, although dormant during

slavery, produces all the effects which result from such a contract among free persons." Girod v. Lewis, 6 Martin (O. S.) 559.

In a later case, arising after the war, the children born of such a marriage claimed to be legitimate heirs of their parents, although that marriage had been dissolved by the death of one of the parties prior to their emancipation. The court quoted the above doctrine with approval, but said:

"We think that the marriage which is to produce these civil results must exist at the time the emancipation takes place. In this case the marriage was dissolved before emancipation. The parties' rights, therefore, were not dormant; they were dead; and the subsequent emancipation, as it could not resuscitate the marriage, could produce none of the civil fruits which are the results of a civil marriage." Pierre v. Fontenette, 25 La. Ann. 617.

This indicates the clear opinion of the court to have been that, had the marriage continued at the date of emancipation, the children, born during slavery, would have been legitimate; and so it was directly decided in a still later case, where the broad doctrine was laid down, that:

"As to those who were our slaves, their own consent and that of their masters were alone sufficient to give to their marriage an undeniable validity, one which produced no effect as long as they were held in bondage, but which, from their emancipation, has secured for them and their posterity the rights and privileges bestowed by the state on a marriage authorized and sanctioned by its laws, on the birth of children legitimated by that marriage." Succession of Pearce, 30 La. Ann. 1168.

"From all these cases it results that the civil effects of such marriages were only dormant during slavery, and that emancipation operated not a creation or birth of such rights, but merely an awakening of them." Ross v. Ross, 34 La. Ann. 860.

Edmund and Rose Wiley were married during slavery, with the consent of their owners; they cohabited together thereafter, and continued to live together as husband and wife after their emancipation, and represented to the world that they were husband and wife. One of the civil effects flowing from such a union was the legitimating of the child born during the marriage, and the recognition of plaintiff as their forced heir.

In the later case of Marzette v. Cronk, 141 La. 437, 75 South. 107, which was very similar to the one at bar, it was held that the parties there had, under the law of Louisiana, acquired the status of married persons, without the aid of any ceremony, by living in this state openly as husband and wife, and so holding themselves out from the time they arrived in the state until the relation was terminated by the death of one of the parties; and the children whom they brought with them into the state and held out as theirs were entitled to be recognized as heirs.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed against George Stewart as the heir at law and universal legatee of Eliza Bowman.